IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01899-MSK-KLM

GEORGE C. MURPHY,

      Applicant,

v.

WARDEN LOU ARCHULETTA, and
JOHN SUTHERS, Attorney General of the State of Colorado,

      Respondents.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on the **Application for a Writ of Habeas Corpus**

**Pursuant to 28 U.S.C. § 2254** [Docket No. 2; Filed September 25, 2006] filed *pro se* by

George C. Murphy ("Applicant").  Respondents filed an Answer Brief objecting to the

Application on October 27, 2006 [Docket No. 11].  More than six months later, and without

leave of Court, Applicant filed a reply on April 4, 2007 [Docket No. 20] (hereinafter "First

Traverse").  Applicant filed an additional reply on August 24, 2007 [Docket No. 23]

(hereinafter "Second Traverse").[1]  Due to Applicant's collateral appeal in the state courts,

the trial and appellate records were unavailable for this Court's review for a substantial

period of time, prompting the case to be administratively closed on May 21, 2009 until the

record became available [Docket No. 61].  Upon the conclusion of Applicant's state court

_____

[1] Given Applicant's *pro se* status, the Court considers the arguments made in Applicant's
replies, to the extent that they are relevant to his Application or the Respondents' Answer Brief.

1

appeal, the case was reopened [Docket No. 67] and the record finally obtained [Docket Nos. 72 & 73].

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1C, the Application has been referred to this Court for recommendation. The matter has been fully briefed and is ripe for resolution. The Court has considered the relevant Application pleadings, the state court record, and the applicable case law, and is sufficiently advised in the premises. For reasons set forth below, the Court **RECOMMENDS** that the Application be **DENIED**.

## I. Background

Applicant challenges his state court conviction for first degree sexual assault and sexual assault on a child by use of force pursuant to Colo. Rev. Stat. §§ 18-3-402, -405. In May 1999, Applicant was convicted by a jury in the Adams County District Court, Colorado and sentenced to concurrent twelve and sixteen years in prison. *Application* [#2] at 2. Applicant is currently in custody at the Crowley County Correctional Facility in Olney Springs, Colorado.

The evidence giving rise to Applicant's conviction is the following. On a late summer evening, the nine-year-old victim ("A.S." or the "victim") went outside to find her dog. *Record* vol. VI at 179, 191-93. At the time A.S. left the house, her mother was inebriated and passed out on a bed. *Id.* at 193-94. While outside looking for her dog, A.S. testified that she ran into Applicant and another man named Arnie or "Psycho," both of whom were hanging out near the trash cans in the alley behind her house. *Id.* at 195. A.S. testified that both men took turns holding her down and raping her. *Id.* at 197-200. When A.S.

returned home her mother was still passed out and she did not immediately tell anyone what had occurred. *Id.* at 202, 204.

Soon after the sexual assault, A.S. moved in with a former boyfriend of A.S.'s mother, Rick Lawler. *Id.* at 232. Mr. Lawler's sister, Michelle Teeter, began to notice that A.S. displayed inappropriate behavior with her children, including trying to touch her "sons' private areas and [kissing] on them and [hanging] on them." *Id.* at 234. A.S. began to complain that she experienced itching, burning and stinging in her vaginal area. *Id.* at 235. A.S. also began to take five to eight showers a day claiming that she "felt dirty." *Id.* at 236. A.S.'s strange behavior further escalated and prompted Ms. Teeter to ask A.S. if she had ever been touched inappropriately. *Id.* at 237-39. A.S. did not immediately respond and became fidgety and tried to change the subject. *Id.* at 239-40. At first, she only admitted that Psycho had touched her on her private parts. *Id.* at 242. Later that day, while Ms. Teeter, her family and A.S. were at an amusement park, A.S. broke down and became hysterical because she was seeing visions of her attackers. *Id.* at 207, 243. The next day, Ms. Teeter and her mother tried to talk to A.S. She began to cry and eventually admitted "that there wasn't just one man, there was two, and they did put their penis inside of her." *Id.* at 244-45. She identified the second man as "George." *Id.* at 245. At the time of the incident, A.S. only knew one person named George. *Id.*

During the police investigation into what occurred, Detective Nancy Lee interviewed A.S. *Id.* vol. VII at 79. While A.S. was initially hesitant to talk about what happened, she told Detective Lee a story consistent with the one she told Ms. Teeter and her mother, including that George and Psycho both raped her. *Id.* at 85-87. After the interview,

Detective Lee identified Applicant as the individual named George who lived in the area where the abuse occurred. *Id.* at 91-92. She put together a photographic lineup with a picture of Applicant, and A.S. identified him as one of her abusers. *Id.* at 92-95.

At trial, A.S. was not able to identify Applicant because she did not want to look at him closely and because his appearance had changed. For example, Applicant wore his long hair in a ponytail at trial. He also appeared to have brown eyes while the victim remembered that the George who abused her had blue eyes. *Id.* vol. VI at 178-79, 211-12, 215-16, 220-21. However, it was confirmed at trial that Applicant had blue eyes. *Id.* at 212; vol. VII at 92. Despite the fact that A.S. was unable to make an in-court identification of Applicant, A.S. was able to testify that the man she identified in the photographic lineup was the same George who had raped her. *Id.* vol. VI at 210-11. Further, there was no dispute that the picture from the photographic lineup identified by A.S. was of the Applicant. *See id.* vol. VII at 95.

Also at trial, evidence was presented that A.S. had attempted to recant her allegations of sexual abuse prior to trial. *See*, *e.g.*, *id.* vol. VI at 178-79, 246-47. Despite her earlier recantations, A.S. testified that George and Psycho sexually assaulted her consistent with the initial story A.S. told Ms. Teeter, her mother and Detective Lee. *See id.* at 197-200. A.S. explained that her attempt to recant the allegations was due to her fear of testifying at trial and being taken out of her home. *Id.* at 208-09.

Based on the totality of the evidence presented at trial, Applicant was convicted of raping A.S. Applicant appealed his conviction. The Colorado Court of Appeals ("CCA") denied the appeal. *People v. Murphy*, No. 99CA1759 (Colo. Ct. App. Jan. 18, 2001)

4

(unpublished decision) (*Murphy I*). The Colorado Supreme Court declined to exercise jurisdiction and denied Applicant's petition for writ of certiorari. *Murphy v. People*, No. 01SC159 (Colo. May 29, 2001) (unpublished decision).

Applicant also pursued postconviction relief. In July 2003, Applicant filed a motion pursuant to Colo. R. Crim. P. 35(c), primarily arguing that his trial counsel was ineffective [Docket No. 2-2]. The trial court held an evidentiary hearing and denied postconviction relief. *Record* vol. IX 1-86. On appeal, the CCA affirmed. *People v. Murphy*, No. 04CA0362 (Colo. Ct. App. Dec. 22, 2005) (unpublished decision) (*Murphy II*). Applicant appealed the CCA's decision, and the Colorado Supreme Court declined to grant a writ of certiorari. *Murphy v. People*, 06SC191 (Colo. June 19, 2006) (unpublished decision).

On September 25, 2006, Applicant filed the current action. The Application raises three claims for relief, two of which are related.

| Claims I, III | Counsel's defense at trial and conflict of interest constitute ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. *Application* [#2] at 8-11. |
| Claim II | The prosecution presented false testimony and improper evidence at trial and there was insufficient evidence to convict Applicant in violation of the Fourteenth Amendment. *Id.* at 11-14.[2] |

Respondents contend that portions of Claims I and II should be dismissed due to Applicant's failure to exhaust them. Therefore, prior to resolution of those claims, I will determine whether Claims I and II are properly before the Court. There does not appear to

---

[2] Applicant also appears to make a sufficiency of the evidence argument in Claim III which the Court subsumes into the analysis of Claim II.

be any issue regarding the timeliness of Applicant's claims.

## II. Analysis

### A.    Applicant's Status

Applicant is proceeding *pro se*.  Therefore, the Court must construe his Application liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural or pleading defects caused by Applicant's *pro se* status.  *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993).  However, the Court is not the Applicant's advocate and must nevertheless deny an application that is based on vague, conclusory, or unsupported allegations.  *Hall*, 935 F.2d at 1110.

### B.    Standards of Review

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," or (3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

The first and second standards of review involve claims of legal error.  Both standards require that clearly established law warrants an analysis on the merits.  *House v.*

*Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). A state court decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406. A state court decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue. *Id.* at 409. However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly. Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'" *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

The third standard of review involves claims of factual error. While this standard requires a substantial showing by Applicant, "deference does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). However, pursuant to this Court's habeas review of state court decisions involving factual conclusions, a presumption of correctness exists regarding state trial and appellate court findings of fact. *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982). As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

### C. Exhaustion

Respondents contend that a portion of Claim I, namely that appellate counsel was ineffective for failing to file a notice of appeal on the issue of a conflict of interest, is procedurally barred because Applicant failed to exhaust it. *Answer Brief* [#11] at 21.

Respondents also contend that portions of Claim II, namely that the prosecution presented false testimony and used improper evidence, are procedurally barred because Applicant failed to exhaust them. *Id.* at 24. Respondents concede that Applicant exhausted the remainder of Claims I and Claim II and the entirety of Claim III for purposes of the Court's resolution of these claims on their merits.

"The exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). The state and federal courts have concurrent power to "guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (citation omitted). As such, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity [for] the state courts to correct a constitutional violation." *Darr v. Burford*, 339 U.S. 200, 204 (1950), overruled on other grounds by *Fay v. Noia*, 372 U.S. 391 (1963). Accordingly, "a state court prisoner may initiate a federal habeas petition only if the state courts have had the first opportunity to hear the claim sought to be vindicated.'" *Vasquez*, 474 U.S. at 257 (emphasis added) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)).

As to Claim I, Applicant never argued in state court that his appellate counsel was ineffective for failing to file a notice of appeal on the conflict of interest issue. Although Applicant raised a number of factual bases to support his contention that trial counsel was ineffective in his request for postconviction relief, he failed to raise this issue with regard to appellate counsel's performance. As such, I find that Applicant did not fully afford the state

8

courts an opportunity to pass judgment on whether his appellate counsel provided ineffective assistance on this issue. At this stage in Applicant's case, he is now procedurally barred from doing so. *See Coleman v. Thompson*, 501 U.S. 722, 731-32, 750 (1991). While appellate counsel's ineffective assistance can constitute "cause" sufficient to excuse a failure to exhaust, that allegation must first be presented to the state courts as a independent claim prior to asserting it here. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) (citing *Burford*, 339 U.S. at 204). Here, Applicant has failed to demonstrate the application of an exception to the procedural bar. *See Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995). Applicant's unsupported contention that he satisfied the exhaustion requirement is unpersuasive to overcome the procedural bar. *See Second Traverse* [#23] at 2. Accordingly, Applicant's failure to exhaust this portion of Claim I necessitates its denial.[3]

As to the portion of Claim II challenging the prosecution's use of certain evidence and testimony, Applicant failed to assert both challenges on direct appeal of his conviction or in postconviction relief. Therefore, Applicant did not afford the state appellate courts the opportunity to review the validity of the prosecution's evidence or testimony, and these challenges are considered procedurally barred. *See Coleman*, 501 U.S. at 731-32, 750. Furthermore, Applicant has failed to demonstrate the application of an exception to the procedural bar. *See Klein*, 45 F.3d 1395, 1400. As such, the issues are not deemed exhausted for purposes of pursuing habeas relief. Accordingly, Applicant's failure to

---

[3] In any event, the Court notes that the claim that appellate counsel failed to file a notice of appeal on this issue has no merit, as counsel, in fact, took a direct appeal from Applicant's conviction on the issue of trial counsel's alleged conflict of interest. *See, e.g.*, *Murphy I*, No. 99CA1759, at 5-8.

exhaust necessitates the denial of this portion of Claim II.

In summary, I find that portions of Claims I and II are unexhausted and do not address those issues further. The remainder of this Recommendation addresses the remaining portions of Claims I and II and the entirety of Claim III.

### D.    Merits of Remaining Claims

Applicant's remaining claims can be divided into three issues: (1) Counsel did not adequately represent Applicant at trial; (2) Counsel "labored under a conflict of interest," *Application* [#2] at 10; and (3) There was insufficient evidence to convict Applicant of the sexual assault.

#### 1.    Adequate Representation

Applicant contends that trial counsel's defense was deficient in several ways: (1) counsel failed to investigate or present the defense that no crime had occurred; (2) counsel failed to investigate or introduce exculpatory evidence; and (3) counsel failed to communicate his defense strategy with Applicant.[4] Applicant claims that each of these errors constituted ineffective assistance of counsel pursuant to the Sixth Amendment and deprived Applicant of equal protection and a fair trial pursuant to the Fourteenth

---

[4] Although Respondents highlight an additional argument made by Applicant in his postconviction relief motion, namely that counsel was also ineffective for failing to seek a psychological examination of the victim, Applicant did not re-assert this contention in his Application. *See Answer Brief* [#11] at 18-20. Therefore, I do not substantively address whether the failure to seek an examination of the victim constituted ineffective assistance of counsel. In any event, I note that there does not appear to a constitutional or federal right for defendants to seek an examination of a sexual assault victim. *See generally Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (noting that habeas claim that applicant was denied procedure provided for by state law is insufficient to form the basis for habeas relief). In addition, I agree with the CCA that trial counsel's decision not to pursue an examination of the victim was reasonable given the state's evidence and the defenses presented. *See Murphy II*, 04CA0362, slip op. at 10. As such, trial counsel's failure to pursue this procedure does not evidence

Amendment. Specifically, Applicant argues that "[a]ppointed defense counsel prejudiced his defense by agreeing with the prosecution that this alleged crime actually took place. Instead of holding the prosecution to [its] burden of proof of each and every essential element of the crime charged . . . counsel opted to present a trial strategy that was much weaker defense than that which was available." *Application* [#2] at 8-9.

The CCA found that (1) Applicant's contention that his trial counsel failed to investigate or present the theory that the crime did not occur was not supported by the record, *Murphy II*, No. 04CA0362, slip op. at 4-5, 8; (2) given the record before it, including the explanations of counsel for his failure to present certain testimony or documents, Applicant's contention that his counsel failed to investigate or present exculpatory evidence was without merit, *id.* at 3-4; and (3) Applicant failed to support his contention that counsel did not adequately keep him informed of defenses, *id.* at 5-6. Specifically, the CCA held that

> the record discloses that in his closing argument counsel argued there was no physical evidence that the victim had been sexually assaulted, her changing statements made her incredible, and her sexualized behavior was the likely product of her horrible upbringing. Accordingly, we conclude that the trial court did not err in rejecting defendant's contention that trial counsel was ineffective [for failing to argue that no crime occurred at all].

*Id.* at 8. In addition, the CCA held that Applicant's contention that he was prejudiced by counsel's failure to investigate or present exculpatory evidence was either not supported by the record (which shows that counsel did make and introduce exculpatory arguments) or did not amount to error (given the type of testimony or evidence Applicant claims should

---

ineffective assistance.

have been admitted). *Id.* at 4-5. Finally, the CCA noted that Applicant's issue with the level of communication he had with counsel did not rise to the level of a constitutional violation. *Id.* at 5-6.

The Court's analysis on this issue is limited to whether the CCA's decision was contrary to or an unreasonable application of Supreme Court precedent or whether the CCA unreasonably applied the facts and evidence available to it. 28 U.S.C. § 2254(d). Respondents argue that the CCA correctly held that Applicant's trial counsel provided effective assistance. *Answer Brief* [#11] at 21-22.

As a preliminary matter, the Court notes that Applicant's third contention that his counsel's failure to keep him adequately informed constitutes ineffective assistance can be summarily resolved. While counsel has a duty to keep his client adequately informed, see *United States v. Soto Hernandez*, 849 F.2d 1325, 1328 (10th Cir. 1988), the CCA held, and I agree that Applicant has failed to allege sufficient evidence that his counsel was neglectful or that the alleged lack of communication impacted the trial or counsel's representation. *See Murphy II*, No. 04CA0362, slip op. at 5-6. For example, as will be discussed below, the defenses Applicant alleges his counsel did not adequately assert due to a lack of communication with Applicant were, in fact, raised by counsel, as evidenced by his questioning of witnesses and closing argument.

### a. Investigation and Presentation of Defense that No Crime Occurred

The CCA's determination that counsel adequately investigated Applicant's defenses based on the record before it is a factual determination which is entitled to a presumption of correctness. *See Sumner*, 455 U.S. at 592-93. Here, Applicant provides no basis for his

conclusion that his trial counsel actually failed to adequately investigate that no crime occurred. Rather, he merely suggests that trial "counsel failed to investigate the stronger defense . . . rather than to try to uncover the truth in regaurd [sic] to this alleged crime." *Application* [#2] at 9. Such a conclusory allegation, which is based on no more than speculation, is insufficient to support a claim for ineffective assistance of counsel. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (noting that court is "not required to fashion [Applicant's] argument for him where his allegations are merely conclusory in nature and without supporting factual averments").

A review of the CCA's findings and the state court record does not reveal that trial counsel failed to conduct an investigation. Rather, it reveals that not only did trial counsel investigate whether the crime occurred, but he also presented this as one of his primary defenses. *See, e.g.*, *Record* vol. VII at 144-45 (arguing that there was no conclusive evidence that A.S. had been sexually assaulted and that she had been led to making up the story). Considering the above, the Court agrees with the CCA that there is no evidence that trial counsel failed to investigate whether the crime occurred, particularly in light of the fact that counsel employed this defense. As will be addressed in greater length below, although trial counsel's defense of Applicant was ultimately unsuccessful, this does not undermine the level of deference afforded counsel's performance. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Chandler v. United States*, 218 F.3d, 1305, 1314 (11th Cir. 2000) (noting that unless record shows otherwise, counsel's decision is presumed to be within the range of competency).

The CCA's conclusion that trial counsel's performance did not amount to ineffective

assistance is a mixed legal and factual conclusion, which if based on clearly established precedent, is entitled to deference. *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002). The CCA applied the standard for determining whether Applicant's trial counsel was ineffective enunciated in *Strickland v. Washington*. *See Murphy II*, 04CA0362, slip op. at 1. Specifically, to establish ineffectiveness of counsel, Applicant must show (1) that his counsel's actions fell below an objective standard of reasonableness, and (2) that the attorney's conduct prejudiced the proceedings such that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 687. More simply, Applicant must show that his counsel's performance was deficient and that he was prejudiced by it. *Id.* at 687-92; *Trice*, 196 F.3d at 1159-60. This is a challenging standard for Applicant because "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The Court judges "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* But "[a]bsent some effect of challenged conduct on the reliability of the trial process, the [constitution] is generally not implicated." *United States v. Cronic*, 466 U.S. 648, 658 (1984).

To succeed on his ineffective assistance claim based on trial counsel's performance at trial, Applicant must overcome the presumption that the challenged action is considered sound trial strategy. *Strickland*, 466 U.S. at 689. The deference to an attorney's strategic trial decisions will stand unless the decision itself was clearly unreasonable. *Bullock*, 297 F.3d at 1046-47. "Where it is shown that a particular decision was, in fact, an adequately

informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United States v. Nguyen*, 413 F.3d 1170, 1181 (10th Cir. 2005) (citing *Bullock*, 297 F.3d at 1044).

As a preliminary matter, while Applicant argues that his trial counsel failed to present the defense that no crime occurred, this contention is belied by the record. As noted above, one of trial counsel's strategies was to question whether the crime occurred. *See, e.g.*, *Record* vol. VII at 144-45. To the extent that Applicant's claim can more broadly interpreted to take issue with trial counsel's performance in presenting this defense, it is unclear how his trial counsel could have argued this defense any more forcefully. Trial counsel pointed out the lack of physical evidence, including that there was no major scarring on the victim's vagina. *See id.*; *see also id.* at 147-49, He also argued that reasonable doubt was raised because any injury could have been caused by earlier abuse suffered by the victim. *Id.* at 148. He also commented on the victim's inability to identify Applicant at trial and the fact that she had recanted her story to several people prior to trial. *Id.* at 152, 154-55. Finally, he reminded the jury that the victim's confession of abuse came only after prompting by Ms. Teeter, whose questioning may have encouraged the victim to make up the story. *Id.* at 145, 149-50. To the extent that Applicant asks the Court to find that trial counsel's performance was lacking in this regard, the record does not support such a finding.

Despite that Applicant appears to argue that the defense could have been stronger or better, the record does not support this contention. As such, Applicant has failed to overcome the presumption that counsel's performance falls within the range of

competence. *See Strickland*, 466 U.S. at 689. From my independent review of the record, I do not find that counsel failed to investigate or adequately present the defense that no crime had occurred.

### b. Investigation and Presentation of Exculpatory Evidence

Applicant argues that trial counsel failed to investigate and present exculpatory evidence. Specifically, Applicant alleges that trial counsel should have called the victim's mother to testify that she believed her daughter fabricated the story and should have elicited witness testimony that the victim told others she was lying about the sexual assault. *Application* [#2] at 9. The CCA found that counsel investigated whether to call the victim's mother, but made a reasonable decision not to call her because she was a problematic witness who would not have been sympathetic to the jury and because her belief about her daughter's story may not have been admissible.[5] *Murphy II*, No. 04CA0362, slip op. at 2-7. In addition, Applicant argues that trial counsel should have utilized unspecified medical and character evidence. *Application* [#2] at 9. The CCA also disagreed with this contention, finding that Applicant failed to provide sufficient detail about what either type of evidence would have revealed to assist his defense. *Murphy II*, No. 04CV0362, slip op. at 3-5.

Here, the Court should accord highly deferential treatment to counsel's conduct and decline to embrace the distorting effect of hindsight or the conclusory allegations of Applicant regarding how the presentation of certain evidence would have changed the outcome at trial. *Strickland*, 466 U.S. at 689. Indeed, for trial counsel's performance to be

---

[5] In relation to Applicant's assertion that trial counsel failed to pursue information regarding A.S.'s recantation, the record reveals that trial counsel did question multiple witnesses, including the victim herself, about her recantation. *See, e.g.*, *Record* vol. VI at 225-26, 262-63; *id*. vol. VII at 38-39. Given that trial counsel pursued this line of questioning, the Court does not further address Applicant's contention that the failure to elicit this information

constitutionally ineffective, "it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999); *Anderson v. AG of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) ("Whether to raise a particular defense is one aspect of trial strategy, and informed 'strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonably, not merely wrong.'" (citation omitted)).

A review of the record and trial counsel's testimony at the postconviction relief hearing reveal sound reasons for trial counsel's decision not to call the victim's mother as a witness or to introduce certain evidence. First, the victim's mother was a problematic witness given her history of substance abuse and the abandonment of her daughter. Second, her testimony was likely inadmissible and largely unnecessary given ample other evidence presented that the victim had recanted her story on more than one occasion. Third, although Applicant contends that an expert witness should have been employed and other witnesses called, trial counsel indicated that he did not believe that such evidence, to the extent any existed, would aid the defense and that Applicant failed to provide him with enough information to locate witnesses who were either homeless or for whom Applicant could not provide a name. *See Murphy II*, No. 04CA0362, slip op. at 3-5; *Record* vol. IX at 36-42. Finally, I note that although Applicant claims that exculpatory evidence should have been utilized, he has failed to indicate what evidence existed. Rather, he claims that his *pro se* status should excuse his lack of knowledge of what evidence would have exonerated him if located and introduced. *See Second Traverse* [#23] at 5-6. Applicant's vague and conclusory assertions, regardless of his *pro se* status, are insufficient to support a finding that his trial counsel provided ineffective assistance. *See generally Fisher*, 38

---

constituted ineffective assistance.

F.3d at 1147; *Hall*, 935 F.2d at 1110.

Given all of the above, there is no evidence that his counsel conducted an incomplete investigation or that Applicant suffered any prejudice from trial counsel's performance. The jury was presented with conflicting evidence, including the fact that the victim could not identify Applicant at trial and that she had recanted her allegations. In addition, the jury knew that there was limited physical evidence. Hearing all of the evidence in its entirety, the jury nevertheless found Applicant guilty. In the Court's estimation, the information Applicant claims could have been presented but was not, would not have changed the result. As such, Applicant has failed to make even a baseline showing that trial counsel's decisions and strategies were wrong. Consequently, Applicant is unable to meet his higher burden of proof that counsel's conduct was completely unreasonable. Accordingly, Applicant is not entitled to relief on his ineffective assistance of counsel claim.[6]

To summarize, the CCA's decision that trial counsel provided effective assistance is not contrary to, nor did it involve an unreasonable application of, federal law, nor does it represent an unreasonable determination in light of the facts presented in the state court proceeding. As such, the Court recommends that Applicant's ineffective assistance of counsel claim be denied because Applicant has failed to prove that he suffered a

---

[6] To the extent that Applicant's claim could be more broadly construed as a general challenge regarding trial counsel's failure to present a defense, this failure, "standing alone, does not constitute ineffective assistance of counsel" where the record reveals that trial counsel cross-examined witnesses and challenged the state's case on the theory that the state failed to meet its burden of proof. *See United States v. Hollis*, 191 F. Supp. 2d 1257, 1271-72 (D. Kan. 2002). *See generally Houchin v. Zavaras*, 919 F. Supp. 1480 (D. Colo. 1996). A review of the record here reveals that trial counsel zealously cross-examined the state's witnesses, made a compelling closing argument and held the state to its burden of proving that Applicant committed the offenses for which he was charged.

constitutional injury.

### 2. Conflict of Interest

Applicant contends that his trial counsel labored under a conflict of interest because he "concealed his knowledge [of a *pro se* motion filed by Applicant to replace him] until after petitioner's conviction was final." *Application* [#2] at 10. Applicant argues that this failure deprived him of representation of "effective, competent, conflict-free counsel, in violation of the Sixth Amendment of the United States Constitution." *Id.* Respondents contend that Applicant does not raise a true conflict of interest claim which is generally asserted to address counsel's competing interests with his client. *Answer Brief* [#11] at 23. *See generally Soto Hernandez*, 849 F.2d at 1328 (noting that a conflict of interest claim involves "any situation in which a defendant's counsel owes conflicting duties to the defendant and some other third person"). At most, Respondents argue that Applicant asserts a difference of opinion with his trial counsel that led to the motion's filing. *See id.* at 23-24. Regardless of the characterization, the Court notes that disagreements regarding trial strategy or tactics and personality disputes do not amount to a constitutionally recognized conflict of interest. *See, e.g.*, *United States v. Franklin*, 321 F.3d 1231, 1239 (9th Cir. 2003); *Hale v. Gibson*, 227 F.3d 1298, 1313 (10th Cir. 2000); *United States v. Leggett*, 81 F.3d 220, 227 (D.C. Cir. 1996).

To the extent that Applicant's claim can be interpreted to argue that his counsel was ineffective for failing to raise the issue of the pending motion prior to trial, the Court notes that the CCA reviewed this issue and found that (1) Applicant's failure to address the issue regarding his motion for new counsel at trial waived his right to challenge it on appeal, *Murphy I*, No. 99CA1759, slip op. at 6-7; and (2) even reviewing the issue from the purview

of an ineffective assistance claim, there was no showing that counsel's failure to timely seek resolution of Applicant's *pro se* motion is evidence of counsel's alleged ineffectiveness. *Id.*; *Murphy II*, No. 04CA0362, slip op. at 8-9. I agree. There is nothing in the record that indicates that trial counsel had a conflict of interest or could not adequately represent Applicant.[7]

To summarize, the CCA's decision regarding this issue is not contrary to, nor did it involve an unreasonable application of, federal law, nor does it represent an unreasonable determination in light of the facts presented in the state court proceeding. As such, the Court recommends that Applicant's conflict of interest claim be denied because Applicant has failed to prove that he suffered a constitutional injury.

### 3. Insufficient Evidence

Applicant contends that there was insufficient evidence to convict him of sexually assaulting the victim. Applicant's primary argument is that the victim's inability to positively identify him as her attacker in court precluded the jury from finding him guilty. Applicant also contends that the victim's failure to initially identify him as her attacker in addition to Psycho, her recantation of the allegations prior to trial, and the lack of physical evidence linking him to the crime amount to insufficient evidence to find him guilty. *Application* [#2] at 11-14. Respondents counter that "[f]rom the totality of the evidence a reasonable juror

---

[7] To the extent that Applicant's claim can be interpreted as a challenge of the trial court's failure to address the motion, I note that the CCA found that any error resulting from the trial court's delay was harmless because the motion was improperly filed by Applicant rather than his counsel and the motion was not accompanied by supporting evidence. *Murphy I*, No. 99CA1759, slip op. at 7-11. Given Applicant's failure to support his allegations of ineffective assistance or conflict of interest herein, I agree that even a timely resolution of the Applicant's motion would not have changed the result. *See generally Mickens v. Taylor*, 535 U.S. 162, 173-74 (2002).

could infer that it was [Applicant] who participated in this sexual assault . . . [and the victim's] inability to identify [Applicant] in court did not negate all the other evidence pointing to his guilt." *Answer Brief* [#11] at 27.

"Sufficiency of the evidence is a mixed question of law and fact." *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006). The reviewing court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To this end, a federal habeas court must determine whether the facts are correct and the law was properly applied to the facts. *Maynard*, 468 F.3d 673. As noted earlier, the determination of a factual issue by a state court is presumed to be correct, and the Applicant has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The CCA found that although there were inconsistencies in the victim's trial testimony, her earlier identification and recantation, "the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support the jury's verdict." *Murphy I*, No. 99CA1759, slip op. at 2. Specifically, the CCA noted that the prosecution "presented evidence at trial that the victim had identified [Applicant] as her attacker in a photographic lineup." *Id.* While she could not identify him at trial because she remembered her attacker as having long hair and blue eyes, "the record indicates that the [Applicant] kept his hair in a pony tail during the trial and evidence was presented at trial that defendant's eyes were in fact blue" despite the fact that they appeared brown to the victim. *Id.* at 3. In addition, the CCA noted that the victim's trial testimony coupled with

other testimony corroborated her initial allegation that she had been sexually assaulted by Applicant, despite the fact that she had recanted her allegations at one point prior to the trial. *Id.* at 2-3.

Upon review of the record, I agree that despite the issues with the in-court identification, the victim's earlier recantation, and lack of physical evidence, there was sufficient evidence for a reasonable juror to conclude that Applicant sexually assaulted the victim. For example, the victim identified Applicant in the initial photographic lineup and the validity of the lineup has not been successfully challenged. Moreover, there is no dispute that the man selected by the victim in the lineup is Applicant and that Applicant's appearance had changed at trial. Further, the victim only knew one adult male named George who lived nearby her house and there is no dispute that Applicant is that individual. In addition, despite the victim's recantations to several people prior to trial, she was able to provide reasonable motivations for her conduct. *See Record* vol. VI at 208-09; *id.* vol. VII at 156. The jury also heard testimony that the individuals who heard the recantation did not believe the victim and that it is not uncommon for victims to attempt to back away from similar allegations for various reasons. *Id.* vol. VI at 245; *id.* vol. VII at 157-60. Finally, despite the lack of physical evidence, the victim's genitals were not necessarily inconsistent with the alleged abuse and her dramatic emotional and behavioral changes after the incident further corroborate that the assault did occur. *Id.* vol. VII at 158-59.

To summarize, the CCA's decision on the sufficiency of the evidence is not contrary to, nor did it involve an unreasonable application of, federal law, nor does it represent an unreasonable determination in light of the facts presented in the state court proceeding. As such, the Court recommends that Applicant's insufficient evidence claim be denied

because Applicant has failed to prove that he suffered a constitutional injury.[8]

## III. Conclusion

In reviewing the merits of Applicant's claims, the Court finds that Applicant is not entitled to relief pursuant to 28 U.S.C. § 2254. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court **RECOMMENDS** that the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that this case be dismissed with prejudice.

IT IS FURTHER ORDERED that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: May 6, 2010                BY THE COURT:

                                      s/ Kristen L. Mix
                                        U.S. Magistrate Judge

---

[8] The Court notes that since the completion of briefing of the Application, Applicant has filed multiple unsolicited documents asserting new claims. Applicant has never been given leave to amend his claims and, therefore, the Court restricts the analysis to the Application pleadings.